# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

CHESTER PLAXICO,     )
             )
    **Plaintiff,**    )
             )
    **v.**       )  No. 10 C 272
             )
COUNTY OF COOK, et al.,    )
             )
    **Defendants.**   )

## MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on the parties' cross motions for summary judgment. For the reasons stated below, Plaintiff's motion for summary judgment is denied and Defendants' motion for summary judgment is granted.

## BACKGROUND

Plaintiff Chester Plaxico (Plaxico) alleges that he began working for the Cook County Sheriff's Department (Sheriff's Department) in May of 1986 and that in May of 2002, he became a Superintendent. Plaxico further alleges that in November 2005, he applied for intermittent leave under the Family Medical Leave Act (FMLA), 29 U.S.C. § 2601, *et seq.*, indicating that he needed the leave to address

1

issues relating to his son's oppositional defiant disorder, conduct disorder, disruptive behavior, depression, and symptoms of bipolar disorder. Plaxico's FMLA request was allegedly approved and effective as of December 21, 2005. Plaxico and his wife, who is also an employee of the Sheriff's Department, allegedly received a combined total of twelve weeks of intermittent leave for 2006. According to Plaxico, he properly reapplied for intermittent leave in 2007 and 2008, and his requests were granted each time.

Plaxico alleges that Defendant Gilberto Romero, Jr. (Romero), who was the Assistant Executive Director of the Department of Corrections, and Defendant Salvador Godinez (Godinez), who is currently the Executive Director of the Department of Corrections, "subjected [Plaxico] to unwarranted discipline . . . in retaliation for [] exercising his rights under the FMLA." (Compl. Par. 21). Plaxico also claims that, with the knowledge, consent, and approval of Romero and Defendant Cook County Sheriff Thomas Dart (Dart), Godinez demoted Plaxico to the position of Chief on January 14, 2008, due to Plaxico taking intermittent FMLA leave.

According to Plaxico, Godinez has allegedly stated, at some unspecified time, that Plaxico was a "valued employee" and that Plaxico's demotions resulted from Plaxico's "personal 'issues,' which required [Plaxico] to take intermittent leave."

(Compl. Par 26).  Godinez also allegedly told Plaxico that Plaxico could discuss being promoted again once Plaxico "got his 'family situation' resolved."  (Compl. Par. 27).  Plaxico alleges that, in spite of being on intermittent FMLA leave, he has worked 45-60 hours per week, and that his requests to substitute compensatory time for FMLA leave have been denied.  In addition, Plaxico claims that he reapplied for intermittent FMLA leave in 2009, and that Defendants approved his leave, but specifically limited Plaxico to five days of intermittent leave per month, which does not satisfy the needs of his son.

Plaxico includes in his complaint FMLA interference claims brought against Defendant County of Cook (County), Dart, in his official and individual capacity, Godinez, in his individual capacity, Romero, in his individual capacity, and Defendant Rosemarie Nolan (Nolan), in her individual capacity (Count I).  Plaxico also includes in his complaint FMLA retaliation claims brought against the County, Dart, in his official and individual capacity, Godinez, in his individual capacity, Romero, in his individual capacity, and Nolan, in her individual capacity (Count II). The County and Individual Defendants previously moved to dismiss Plaxico's claims.  On August 11, 2010, the court granted the County's motion to dismiss the claims brought against the County, but the County remains in the instant action as an indemnitor to Dart in the event that Dart is found to be liable in his official capacity.

The court also denied Individual Defendants' motion to dismiss. The parties have now filed cross-motions for summary judgment.

## LEGAL STANDARD

Summary judgment is appropriate when the record, viewed in the light most favorable to the non-moving party, reveals that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Smith v. Hope School*, 560 F.3d 694, 699 (7th Cir. 2009). A "genuine issue" in the context of a motion for summary judgment is not simply a "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, a genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Insolia v. Philip Morris, Inc.*, 216 F.3d 596, 599 (7th Cir. 2000). In ruling on a motion for summary judgment, the court must consider the record as a whole, in a light most favorable to the non-moving party, and draw all reasonable inferences in favor of the non-moving party. *Anderson*, 477 U.S. at 255; *Bay v. Cassens Transport Co.*, 212 F.3d 969, 972 (7th Cir. 2000). When there are cross motions for summary judgment, the court should "construe the evidence and all reasonable

inferences in favor of the party against whom the motion under consideration is made." *Premcor USA, Inc. v. American Home Assurance Co.*, 400 F.3d 523, 526-27 (7th Cir. 2005).

## DISCUSSION

Defendants move for summary judgment on the FMLA interference and FMLA retaliation claims. Plaxico moves for summary judgment as to liability on the FMLA interference and FMLA retaliation claims and argues that damages should be resolved at trial. The FMLA provides that an eligible employee working for a covered employer is entitled to take up to twelve work weeks of unpaid leave, either on an intermittent basis or all at once within a twelve-month period, in order to attend to issues such as taking care of someone in the employee's immediate family. 29 U.S.C. § 2612(a)-(b). In addition to requirements for providing leave, the FMLA provides that it is "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided" in the FMLA. 29 U.S.C. § 2615(a)(1). Also, if employees exercise their rights under the FMLA, an employer is prohibited from retaliating against the employee because of the exercise of his FMLA rights. 29 U.S.C. § 2615(a).

I.  Interference Claims (Count I)

Plaxico contends that Defendants interfered with his FMLA rights by actions such as allegedly subjecting him to arbitrary transfers, disciplining and demoting him, placing conditions on his leave, creating a hostile environment, and failing to reinstate him to the Superintendent position.  For a FMLA interference claim, a plaintiff must establish that: "(1) he was eligible for the FMLA's protections, (2) his employer was covered by the FMLA, (3) he was entitled to leave under the FMLA, (4) he provided sufficient notice of his intent to take leave, and (5) his employer denied him FMLA benefits to which he was entitled."  *Burnett v. LFW, Inc.*, 472 F.3d 471, 477 (7th Cir. 2006).  Defendants argue that Plaxico has not pointed to sufficient evidence to show that he was denied FMLA benefits to which he was entitled.

A.  Entitlement to Leave

Defendants contend that the undisputed evidence shows that a significant portion of the time that Plaxico took for FMLA leave was spent addressing non-medical family issues that were not covered by the scope of the certification for his FMLA leave.  An employer can require an employee who seeks to take FMLA leave "to obtain a medical certification from a health care provider that sets forth"

information such as the medical facts for the leave.  29 C.F.R. § 825.306(a); *see also Vail v. Raybestos Products Co.*, 533 F.3d 904, 909 (7th Cir. 2008)(stating that "an employer can defeat an interference claim by showing, among other things, that the employee did not take leave 'for the intended purpose'")(quoting *Crouch v. Whirlpool Corp.,* 447 F.3d 984, 986 (7th Cir. 2006)).  Defendants have pointed to evidence showing that Plaxico used FMLA leave for purposes not covered in his FMLA certification.  The FMLA certification process is in place to ensure that employees are taking leave for protected reasons.  If Plaxico wanted to try and expand his certification for additional family issues, it was incumbent on Plaxico to try and get the type of leave certified as medically necessary.  The FMLA certification did not provide Plaxico with carte blanche to take leave for any reason.  Plaxico brought this case claiming that Defendants failed to abide by the FMLA, but the undisputed record shows that it was Plaxico who was not following FMLA requirements.  Thus, the undisputed evidence shows that a significant amount of leave taken under FMLA by Plaxico was outside the scope of his FMLA certification and he was not entitled to FMLA benefits in regard to such leave.


  B.  Absence of Any Denial of FMLA Requests

  Defendants argue that Plaxico was never prejudiced by the denial of FMLA

leave.  For an FMLA interference claim, there can be "no relief unless the plaintiff

can prove that he was prejudiced by the violation." *Franzen v. Ellis Corp.*, 543 F.3d

420, 426 (7th Cir. 2008)(citing *Ragsdale v. Wolverine World Wide Inc.*, 535 U.S. 81,

89 (2002)).  Plaxico has failed to point to any instance when he requested FMLA

leave and his request was denied and Plaxico admits that his requests were granted.

(R DSF Parl 19-20).  Thus, Plaxico has failed to point to sufficient evidence to show

that his FMLA rights were interfered with by Defendants.  Plaxico contends that he

would have taken more FMLA leave but contends that he had vague fears that

employees who took FMLA leave were "stigmatiz[ed]" and he sensed that based on

past events that he was being targeted because he had taken FMLA leave.   (R DSF

Par. 33, 42).   Plaxico claims that he felt there was a "stigma" for those that took

FMLA leave and he testified at his deposition that he began to "feel that [his]

assignments, [his] transfers and other things that were happening to [him] were only

happening because of [his] usage of [his] FMLA time."  (Plax. dep. 30-31); (R DSF

Par. 33).  However, at the summary judgment stage Plaxico cannot simply rely on his

general speculation.  Nor can he base his claims on his claimed fears and beliefs in

the absence of evidence to support such beliefs.  *See Delapaz v. Richardson*, 634

F.3d 895, 901 (7th Cir. 2011)(noting that the plaintiff "present[ed] nothing more than

his own unsubstantiated speculation as to the reason for his demotion; such

conjecture alone cannot defeat a summary judgment motion"). Such metaphysical doubts and speculation are not the type of issues that are genuinely disputed issues that would defeat Defendants' motion for summary judgment. *Matsushita Elec. Indus. Co., Ltd.*, 475 U.S. at 586. Plaxico contends that he did not seek FMLA leave because he was afraid of the consequences if he took such leave. However, Plaxico cannot base an action on pure speculation as to what he thought might have happened if he had requested such leave.

### C.  Transfers

Plaxico contends that while he was Superintendent, he was subjected to arbitrary transfers because he took FMLA leave. In February 2006, Plaxico was transferred from his position as Superintendent of External Operations to Division X. (R SF Par. 43). Plaxico fails to point to evidence to show that such a transfer negatively impacted him in any material fashion. Instead, he vaguely asserts that he thought that the transfer was part of the "totality of the environment at the Cook County Sheriff's Office" and part of the "stigmatizing" of employees that took FMLA leave. (R DSF Par. 43). In September 2007, Plaxico was transferred from Division X to Division II. (R DSF Par. 44). Defendants contend that the transfer did not harm Plaxico and actually benefitted Plaxico. Plaxico does not contest the fact

that the transfer "moved Plaxico from a maximum security, problem-plagued facility to a low security building with less stress and less activity." (R DSF Par. 44). Plaxico attempts to contest the fact that the transfer did not harm him, but again provides only vague statements about his beliefs and fears, referring to his "feel[ing]" that he was being stigmatized based on his FMLA leave and what he refers to as a prior "chain of events." (R DSF Par. 44). The undisputed record also shows that Godinez believed that the problems at Division X were due to Plaxico's lack of leadership, and that the transfer would give Plaxico a break from regulating such a high-maintenance population and would also give another Superintendent an opportunity for such experience. (DSF Par. 45). Finally, Plaxico does not dispute that neither the February 2006 transfer nor the September 2007 transfer involved a demotion, reduction in pay, or alteration of job title. (R DSF Par. 46). Plaxico again reiterates his general fears about stigmatization of employees that took FMLA leave. Plaxico has failed to point to sufficient evidence to indicate that the February 2006 transfer or the September 2007 transfer related to Plaxico's exercise of his FMLA rights.

### D.  Discipline and Demotions

Plaxico claims that his discipline and two demotions in 2008 constituted

interference with his FMLA rights.  Defendants contend that Plaxico was disciplined and demoted based upon legitimate reasons relating to his poor work performance and his drunk driving conviction.

### 1.  Poor Work Performance

Defendants point to evidence showing: (1) that Plaxico failed to perform assigned tasks (DSF Par. 47), (2) that Plaxico failed to give accurate information during meetings (DSF Par. 48), (3) that Plaxico made an unauthorized change in his work hours (DSF Par. 49), (4) that Plaxico was not prepared at meetings and could not answer basic questions about his division (DSF Par. 50), (5) that Plaxico failed to maintain a clean facility (DSF Par. 51), (6) that Plaxico failed to complete work after being repeatedly told to do so (DSF Par. 51), (7) that Plaxico failed to keep up with the changes at the Department of Corrections (DSF Par. 51), (8) that Plaxico failed to prevent excessive violence in his unit (DSF Par. 52), (9) that Plaxico disobeyed orders by his superiors (DSF Par. 53), (10) that Plaxico failed to complete projects he was ordered to complete (DSF Par. 53), and (11) that Plaxico failed to utilize his staff properly.  (DSF Par. 53).  Plaxico attempts to contest some of the alleged poor work performance, but fails to provide any tangible evidence to genuinely dispute such poor work performance.

## 2. January 2008 Demotion

On January 14, 2008, Plaxico was demoted from Superintendent to Chief. (DSF Par. 55). Defendants contend that Plaxico was demoted because he did not perform well in the assignments given to him as a Superintendent. (DSF Parl 55). Plaxico attempts to contest the basis for the demotion arguing that Godinez indicated that Plaxico was demoted because Plaxico was focused on his "issues at home," and that the department was "going in a different direction." (R DSF Par. 55). However, even if the court accepted Plaxico's version of events, such statements by Godinez do not indicate unlawful discrimination and are not inconsistent with the evidence showing that the reason for Plaxico's demotion related to poor work performance. While the FMLA gave Plaxico certain rights to leave and protected him from interference and retaliation, the FMLA did not protect Plaxico from being disciplined for poor work performance. If Defendants provided Plaxico with all he was entitled to under the FMLA and Plaxico was still not able to do his job properly because of issues in his personal life, Defendants did not violate the FMLA by demoting him. Nor does a statement that Defendants were "going in a different direction," necessarily suggest any non-compliance with the FMLA. Also, although Plaxico contends that his January 2008 demotion was part of some "chain of events" that he

believed was a stigmatization of employees that used FMLA leave, Plaxico admits that the demotion was beneficial to him. Plaxico does not dispute that he told Godinez that the change in position would be beneficial to his family because his Superintendent duties were making it difficult to find time to deal with his family issues. (R DSF Par. 57). Thus, Plaxico has not pointed to evidence to show that the January 2008 demotion was in any way connected to his FMLA leave.

### 3. September 2008 Demotion

In July 2008, the Sheriff's Inspector General (Inspector General) completed his investigation into two charges of misconduct relating to Plaxico's 2005 DUI arrest in Mississippi: (1) failure to observe federal, state, and local laws, and (2) conduct unbecoming that reflected discredit on the office. (DSF Par. 62). The Inspector General recommended a thirty-day suspension without pay and Plaxico was ultimately given a five-day suspension without pay. (DSF Par. 62-63). Plaxico subsequently missed work due to family issues and in September 2008, Plaxico was demoted from Chief to the rank of Captain by Godinez based on Plaxico's DUI, and observations of Plaxico's poor work performance, attendance, and lack of focus. (DSF Par. 65). Plaxico argues that Godinez made a reference to Plaxico getting his "personal issues together." (R DSF Par. 65). However, even if such a statement was

made, it does not suggest unlawful discrimination and is not inconsistent with the reasons given by Godinez for the September 2008 demotion. If, despite the leave allowed under the FMLA, Plaxico was not able to do his job, Defendants were not prohibited from demoting Plaxico because of his poor performance or because he was convicted of driving while under the influence of alcohol. Plaxico has failed to point to evidence that indicates that the September 2008 demotion related in any way to his ability to take FMLA leave properly. Plaxico admits that he received a DUI and has not explained why that would not be a sufficient basis to discipline or demote him because of conduct unbecoming to his office. Thus, as indicated above, there is insufficient evidence that indicates any discipline or demotion was related to his ability to take FMLA leave properly.

### E. Conditions on Leave

Plaxico claims that Defendants interfered with his FMLA rights by conditioning approval of his FMLA leave to five times per month in 2009 and two times per week in 2010 without the consultation or approval of the healthcare provider. (P. MSJ 10). Plaxico argues that this conditional approval interfered with his FMLA rights, but it is undisputed that Plaxico was never denied FMLA leave, nor did he exhaust all of the FMLA leave available to him. (D SAF Par. 33). It is

undisputed that Nolan's approval of Plaxico's FMLA request for 2009 is consistent

with the frequency and duration information provided in the medical certificate

obtained by Plaxico. (R DSF Par. 28). Plaxico argues that the certification "suggests

a potential" for more leave, but has not shown that the condition placed on his

FMLA leave was in any way inconsistent with the certification. (R DSF Par. 28). If

Plaxico felt that his need for leave exceeded the approved amount, the burden was on

Plaxico to obtain a new certification. 29 C.F.R. § 825.306(8); *Stoops v. One Call*

*Communications, Inc.*, 141 F.3d 309, 313 (7th Cir. 1998)(stating that the plaintiff

"was the person most able to determine that the initial certification was 'wrong' and

was the person with the incentive, certainly the burden, to have it corrected"). Thus,

Plaxico has not pointed to evidence that indicates that the condition placed on his

FMLA leave in any way interfered with his FMLA rights.


    F.  Substitution of Time

       Plaxico argues that Defendants showed a policy of stigmatizing those that take

FMLA leave by requiring him to utilize accrued paid time while on FMLA leave.

However, such a policy is entirely consistent with 29 C.F.R. § 825.207(a), which

provides that an "employer may require the employee to substitute accrued paid

leave for unpaid FMLA leave." *Id.* Thus, Plaxico was seeking benefits beyond

those provided in the FMLA.

G.  Notice to Supervisors

Plaxico also argues that Defendants showed a policy of stigmatizing those that take FMLA leave by requiring him to notify his direct supervisor of leave, including his FMLA leave.  However, such a requirement is consistent with 29 C.F.R. § 825.303(c), which provides that "an employer may require employees to call a designated number or a specific individual to request leave." *Id.*  Plaxico has not pointed to any evidence that suggests such notice requirement inhibited Plaxico in taking FMLA leave.

H.  Rescinding FMLA Leave

Plaxico also argues that Defendants interfered with his FMLA rights by refusing to allow him to rescind FMLA leave taken by making up work after the fact. However, no such right is given in the FMLA.  Defendants' policy in this regard is consistent with 29 CFR § 825.205(a).

I.  Work Environment

Plaxico claims that Defendants unlawfully interfered with his rights by

creating an environment hostile to those who used FMLA leave, thus discouraging him from fully exercising his FMLA rights. Plaxico alleges that the policies hostile to FMLA included putting suspected FMLA abusers on a "watch list," investigating employees suspected of abusing FMLA leave, and by not allowing employees to maintain secondary employment. Although Plaxico claims that such actions were taken against those taking FMLA leave, Plaxico admits that he took FMLA leave and he was not placed on any FMLA watch list, was not investigated as a potential FMLA abuser, and did not have secondary employment. (R DSF Par. 31). Plaxico has failed to point to sufficient evidence indicating that there was a hostile environment at his workplace that interfered with the exercise of his FMLA rights.

J. Reinstatement

Plaxico claims that Defendants interfered with his FMLA rights by not reinstating him to his former position of Superintendent following the expiration of his FMLA leave. (P. MSJ 10). An employee is not entitled to return to his former position if he would have been subjected to an adverse employment action regardless of whether he took FMLA leave. *See Goelzer v. Sheboygan County, Wis.,* 604 F.3d 987, 993 (7th Cir. 2010)(stating that "[a]n employee's right to reinstatement is not absolute")(citing *Breneisen v. Motorola, Inc.*, 512 F.3d 972, 978 (7th Cir. 2008)). In

order to show that he was entitled to reinstatement, Plaxico would have to show that he would not have been demoted if he had not taken FMLA leave. As indicated above, in regard to the demotions, there are undisputed facts establishing that Plaxico had been failing to meet performance expectations at work. Plaxico has failed to point to sufficient evidence that indicates that he would have been reinstated if he had not taken FMLA leave or that the decision not to reinstate Plaxico was in any way related to his ability to take FMLA leave properly.

### K. Plaxico's Motion for Summary Judgment on Interference Claims

Plaxico argues that the court should grant his motion for summary judgment on his interference claims. Plaxico contends that it is undisputed that he was entitled to FMLA protection and that the undisputed record shows that he was discouraged from exercising his FMLA rights. However, as explained above, the undisputed record shows that Plaxico used his FMLA leave for reasons not specified in his FMLA certification and that Defendants' actions in no way related to Plaxico's ability to take FMLA leave properly. Plaxico claims he feared that he would be punished if he took FMLA leave and argues, for example, Defendants had a policy creating a "watch list" on employees that took FMLA leave and investigating employees for FMLA abuses. However, Plaxico took FMLA leave and he has

pointed to no evidence that shows that he was ever on such a watch list or investigated for potential FMLA abuse. Plaxico's unfounded fears are not sufficient to warrant a finding in his favor as a matter of law. The record in fact shows that had Defendants investigated Plaxico's FMLA leave, it would have been discovered that Plaxico indeed was taking leave for purposes outside of his FMLA certification. Therefore, based on the above, even when considering all of the evidence in its totality, Defendants' motion for summary judgment on the FMLA interference claims (Count I) is granted. Plaxico's motion for summary judgment on the FMLA interference claims is denied.

II. Retaliation Claims (Count II)

Defendants move for summary judgment on the retaliation claims (Count II). Plaxico contends that he was demoted twice in retaliation for exercising his FMLA rights. FMLA claims brought under a theory of retaliation "requires proof of discriminatory or retaliatory intent. . . ." *Kauffman v. Fed. Exp. Corp.*, 426 F.3d 880, 884 (7th Cir. 2005). To defeat a motion for summary judgment on a FMLA retaliation claim, a plaintiff must proceed under either the direct or indirect method of proof. *Lewis v. Sch. Dist. # 70*, 523 F.3d 730, 741 (7th Cir. 2008). In the instant action, Plaxico seeks to proceed under the direct method of proof in his motion for

summary judgment.  (P. MSJ 13-15).  Under the direct method, a plaintiff must establish: "(1) a statutorily protected activity; (2) a materially adverse action taken by the employer; and (3) a causal connection between the two."  *Ames v. Home Depot U.S.A., Inc.*, 629 F.3d 665, 670 (7th Cir. 2011)(internal quotations omitted)(quoting *Caskey v. Colgate–Palmolive Co.,* 535 F.3d 585, 593 (7th Cir. 2008)).

### A.  Demotion Decisions

In the instant action, Plaxico has failed to point to evidence showing that Dart or Nolan had any input whatsoever in Godinez's decision to demote Plaxico, and although Romero reported Plaxico's performance deficiencies to Godinez, it is undisputed that he did not specifically recommend that Plaxico be demoted.  (R PSAF Par. 27).  In the fall of 2008, Plaxico applied for a refund of his deferred compensation from the deferred compensation administrator, Nationwide Insurance (Nationwide), and Plaxico asked Godinez to write a letter on Plaxico's behalf explaining the reasons for his most recent demotion.  Plaxico argues that in the letter sent by Godinez to Nationwide on November 18, 2008, Godinez did not specify all of the reasons for Plaxico's demotions now asserted by Defendants in this case.  The record reflects that Godinez wrote the letter relating to Plaxico's application for deferred compensation benefits.  The contents of a letter written to a third-party after

Plaxico had been demoted does not necessarily indicate that Plaxico's FMLA leave was the motivating factor for Plaxico's demotion at the time that Godinez made the decision to demote him. Godinez testified that he thought it was unnecessary to divulge all information to a third-party regarding the demotions that might put Plaxico in a poor light. (Godinez dep. 111-13). Plaxico has not pointed to any evidence to contradict such a position.

### B.  Work Performance Prior to Demotions

Plaxico also argues that Godinez had never issued a written reprimand to Plaxico regarding any performance problems prior to Plaxico's demotions. However, the record indicates that prior to his first demotion in January 2008, Plaxico was issued a written reprimand by another supervisor in September 2007 for inattention to duty, specifically stating the performance deficiencies that rendered the reprimand necessary.

### C.  Timing of Demotions

Plaxico also argues that the timing of Plaxico's demotions constitutes circumstantial evidence that his FMLA leave motivated the decision to demote him. (P. MSJ 14). However, a careful examination of the undisputed facts shows that the

timing of the demotions does not establish a causal link between the demotions and his FMLA leave. The record shows that the written reprimands given to Plaxico contained specific information regarding the instances, including dates and details describing Plaxico's performance. In fact, Plaxico had been utilizing FMLA leave for almost two years while he was a Superintendent. Plaxico does not offer any evidence as to why Defendants did not demote him during that period of time, if in fact his demotions were motivated by his FMLA leave. Even viewing the record in the light most favorable to Plaxico, there is overwhelming, undisputed evidence that Plaxico's poor performance was the basis for his demotions.

### D. Plaxico's Motion for Summary Judgment on Retaliation Claims

Plaxico argues that the court should grant his motion for summary judgment on his retaliation claims. Plaxico contends, for example, that the timing of his demotions shows that there was retaliation. However, Plaxico is not entitled to prevail as a matter of law or even go to trial based on the mere fact that some adverse action was taken against an employee sometime after the employee took FMLA leave. Taking FMLA leave does not insulate an employee from all future discipline regardless of whether the employee is performing his job well or obeying workplace rules. The undisputed record clearly shows nothing more than that Plaxico was

convicted for a DUI and that his work performance was poor in a variety of ways. The demotions that ultimately followed coincide directly with Plaxico's failures at work and troubles with the law.

Thus, Plaxico has not pointed to sufficient evidence that indicates any causal connection between actions by Defendants and Plaxico's FMLA leave. Nor has Plaxico shown that he could proceed under the indirect method of proof. Plaxico has not pointed to sufficient evidence that shows that retaliation was taken against him because of his FMLA leave. Therefore, after considering all of the evidence in its totality, Defendants' motion for summary judgment on the FMLA retaliation claims is granted. Plaxico's motion for summary judgment on the FMLA retaliation claims is denied.

**CONCLUSION**

Based on the foregoing analysis, the court grants Defendants' motion for summary judgment and denies Plaxico's motion for summary judgment.


_____
Samuel Der-Yeghiayan
United States District Court Judge


Dated:   October 12, 2011